Frank A. Angileri (*pro hac vice*)
Thomas A. Lewry (*pro hac vice*)
Marc Lorelli (*pro hac vice*)
Christopher C. Smith (SBN 238882)
**BROOKS KUSHMAN P.C.**
1000 Town Center, 22nd Floor
Southfield, MI 48075
Phone: (248) 358-4400 / Fax: (248) 358-3351
E-Mail: fangileri@brookskushman.com
E-Mail: tlewry@brookskushman.com
E-Mail: mlorelli@brookskushman.com
E-Mail: csmith@brookskushman.com

William E. Thomson, Jr. (SBN 47195)
**BROOKS KUSHMAN P.C.**
6005 S. Figueroa Street, Suite 2080
Los Angeles, California 90017-5726
Phone: (213) 622-3003 / Fax: (213) 622-3053
E-Mail: wthomson@brookskushman.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIMAR SYSTEMS, INC., d/b/a CMS Technologies and Chrimar Holding Company, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>NETGEAR, INC.,<br><br>*Defendant*. | Case No. 16-cv-00624-SI<br><br>**THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Chrimar Systems Inc. d/b/a CMS Technologies ("Chrimar") and Chrimar Holding Company, LLC ("Holding") file this Third Amended Complaint against NETGEAR, Inc. ("the Complaint") for infringement of United States Patent Nos. 8,942,107 ("the '107 Patent"), 8,902,760 ("the '760 Patent"), 9,019,838 ("the '838 Patent"), and 9,812,825 ("the '825 Patent"), collectively the "Patents-in-Suit."

## The Parties

1. Chrimar is a Michigan corporation with a place of business located at 36528 Grand River Avenue, Suite A-1, Farmington Hills, Michigan 48335.

2. Holding is a Texas limited liability company with a place of business located at 911 NW Loop 281, Suite 211-30, Longview, Texas 75604.

3. Chrimar and Holding are collectively referred to as "Plaintiffs" or "CMS."

4. NETGEAR, Inc. ("NETGEAR") is a Delaware corporation with its principal place of business located at 350 E. Plumeria Drive, San Jose, California 95134. This Court has personal jurisdiction over NETGEAR.

## Jurisdiction and Venue

5. This action arises under the patent laws of the United States, 35 U.S.C. § 101 et seq.

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

8. This Court has personal jurisdiction over NETGEAR because NETGEAR has engaged in continuous and systematic activities in the state of California, including in this district.

## Patents-in-Suit

9. Chrimar is the owner and assignee of the '107 Patent, titled "Piece of Ethernet Terminal Equipment" and Holding is the exclusive licensee of the '107 Patent. CMS owns all substantial rights in the '107 Patent. A true and correct copy of the '107 Patent is attached as Exhibit A.

10. Chrimar is the owner and assignee of the '760 Patent, titled "Network System and Optional Tethers" and Holding is the exclusive licensee of the '760 Patent. CMS owns all substantial rights in the '760 Patent. A true and correct copy of the '760 Patent is attached as Exhibit B.

11. On September 9, 2017, the U.S. Patent and Trademark Office issued a reexamination certificate for the '760 patent confirming the patentability of claims 1-72, cancelling claims 170-172, determining claims 73, 145, 146 and 219 are patentable as amended, and determining claims 74-100, 104-144, 147-169 and 173-218 are patentable as dependent on an amended claim. A copy of the reexamination certificate is attached as Ex. C.

12. Chrimar is the owner and assignee of the '838 Patent, titled "Ethernet Device" and Holding is the exclusive licensee of the '838 Patent. CMS owns all substantial rights in the '838 Patent. A true and correct copy of the '838 Patent is attached as Exhibit D.

13. Chrimar is the owner and assignee of the '825 Patent, titled "Ethernet Device" and Holding is the exclusive licensee of the '825 Patent. CMS owns all substantial rights in the '825 Patent. A true and correct copy of the '825 Patent is attached as Exhibit E.

## NETGEAR's Accused Products

14. Upon information and belief, NETGEAR makes, uses, offers to sell, sells, and/or imports Power over Ethernet ("PoE") powered devices ("PDs") that comply with and/or are compatible with the PoE Standards, namely IEEE 802.3af and/or 802.3at.

15. Upon information and belief, NETGEAR makes, uses, offers to sell, sells, and/or imports PoE power sourcing equipment ("PSEs") that comply with and/or are compatible with the PoE Standards, namely IEEE 802.3af and/or 802.3at.

16. The Accused PD Products and the Accused PSE Products are collectively the "Accused Products" and are identified, based on current available public information, in the Infringement Contentions served contemporaneously with this Third Amended Complaint and incorporated by reference.

17. Upon information and belief, the Accused Products are offered for sale and sold throughout the United States, including within the Northern District of California.

18. NETGEAR has purposefully and voluntarily placed the Accused Products into the stream of commerce with the expectation that these products will be purchased and used by end users in the United States, including end users in the Northern District of California.

19. NETGEAR provides direct and indirect support concerning the Accused Products to end users, including end users within the Northern District of California.

## Count I

### INFRINGEMENT OF U.S. PATENT NO. 8,942,107

20. CMS incorporates the foregoing by reference as if fully set forth herein.

21. NETGEAR has and continues to directly infringe the '107 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing into the United States the Accused PD Products.  Based on current available public information, the Infringement Contentions served contemporaneously with this Third Amended Complaint identify the claims infringed and the bases for CMS's infringement allegations.

22. NETGEAR has been on notice of the '107 Patent since at least as early as July of 2015.

23.     CMS has been damaged as a result of NETGEAR's infringing conduct described in this Count.

24.     NETGEAR's infringement of the '107 Patent has been and continues to be willful.

25.     Because NETGEAR's infringement of the '107 Patent has been and continues to be willful, Plaintiffs seek enhanced damages of up to three times the amount found or assessed under 35 U.S.C. § 284.

## Count II

### INFRINGEMENT OF U.S. PATENT NO. 8,902,760

26.     CMS incorporates the foregoing by reference as if fully set forth herein.

27.     NETGEAR has and continues to directly infringe the '760 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing into the United States the Accused Products.  Based on current available public information, the Infringement Contentions served contemporaneously with this Third Amended Complaint identify the claims infringed and the bases for CMS's infringement allegations.

28.     NETGEAR has and continues to indirectly infringe the '760 Patent in violation of 35 U.S.C. § 271(c) by offering to sell, selling, and/or importing the Accused Products into the United States.

29.     The Accused Products implement a PoE technology, which allows for provision of electrical power to a networked device over the same Ethernet cable that is used for data transmission. One example of a PoE device is a Voice Over Internet Protocol ("VOIP") business telephone. A PoE VOIP phone does not require an AC adapter that plugs into a an electrical outlet because the power to operate the phone is provided through the Ethernet cable, which also carries the telephone signals between the phone and the network.

30. The Accused Products fall within two categories of PoE equipment—PDs, which are devices that receive power via an Ethernet cable (such as a PoE VOIP phone), and PSEs, which are devices connected to the opposite end of the Ethernet cable and send power to the PDs. The Accused PD Products and the Accused PSE Products operate cooperatively to provide PoE. The '760 Patent is a system-level patent that implicates the provision of PoE by the Accused PD and PSE Products in combination.

31. Each Accused Product complies with and/or is compatible with the PoE Standards, namely IEEE 802.3af and/or 802.3at. More specifically, each Accused Product implements the detection and classification protocols as specified in the PoE Standards.

32. The detection protocol of the PoE Standards ensures that the Accused PSE Products only send power to PDs. The classification protocol of the PoE Standards ensures that the Accused PSE Products supply the correct power level to the Accused PD Products.

33. The detection and classification protocol sections of the PoE Standards are explicit—down to the circuit level—as to how these functions must be implemented in the Accused Products.

34. Each Accused Product includes specialized hardware and circuitry in order to implement the detection and classification protocols of the PoE Standards. Such hardware and circuitry includes, but is not limited to, a PoE controller, a detection circuit path that includes a PoE detection signature resistance, and a classification circuit path that includes a PoE power classification signature resistance.

35. Each Accused Product is a component of a patented machine, manufacture, combination, or system and constitutes a material part of the invention as claimed in the '760 Patent. For example, the '760 Patent is a system-level patent that implicates the detection and classification protocols of the PoE Standards and each Accused Product includes specialized

hardware and circuitry to implement the detection and classification protocols of the PoE Standards.

36. Since receiving notice of Plaintiffs' patent rights under the '760 Patent, NETGEAR knows that the Accused Products are especially made or especially adapted for use in a manner that infringes one or more claims of the '760 Patent, as it markets and/or advertises the Accused Products as having PoE capability.

37. The Accused Products are not a staple article or commodity of commerce suitable for substantial non-infringing use. Each Accused Product incorporates specialized hardware and circuitry to implement the detection and classification protocols of the PoE Standards. The incorporation of this specialized hardware and circuitry serves no function other than to determine whether an Ethernet-connected device is a PoE-compliant device ("detection"), and, if so, the amount of power it is designed to accept ("classification"). There is no other established or practical non-infringing use of the specific specialized hardware and circuitry as required by the PoE Standards and claimed by the '760 Patent.

38. The fact that the Accused Products may also incorporate other circuitry or functionality that does not implicate the '760 Patent is irrelevant for determining whether the Accused Products have substantial non-infringing uses. *See Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325 (Fed. Cir. 2008).

39. NETGEAR's customers that use the Accused PD or PSE Products in their PoE networks directly infringe the '760 Patent.

40. NETGEAR has been on notice of the '760 Patent since at least as early as July of 2015.

41. NETGEAR's infringement of the '760 Patent has been and continues to be willful.

42. Because NETGEAR's infringement of the '760 Patent has been and continues to be willful, Plaintiffs seek enhanced damages of up to three times the amount found or assessed under 35 U.S.C. § 284.

## Count III

### INFRINGEMENT OF U.S. PATENT NO. 9,019,838

43. CMS incorporates the foregoing by reference as if fully set forth herein.

44. NETGEAR has and continues to directly infringe the '838 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing into the United States the Accused Products. Based on current available public information, the Infringement Contentions served contemporaneously with this Third Amended Complaint identify the claims infringed and the bases for CMS's infringement allegations.

45. NETGEAR has been on notice of the '838 Patent since at least as early as July of 2015.

46. CMS has been damaged as a result of NETGEAR's infringing conduct described in this Count.

47. NETGEAR's infringement of the '838 Patent has been and continues to be willful.

48. Because NETGEAR's infringement of the '838 Patent has been and continues to be willful, Plaintiffs seek enhanced damages of up to three times the amount found or assessed under 35 U.S.C. § 284.

## Count IV

### INFRINGEMENT OF U.S. PATENT NO. 9,812,825

49. CMS incorporates the foregoing by reference as if fully set forth herein.

50. NETGEAR has and continues to directly infringe the '825 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing into the United States the Accused Products. Based on current available public information, the Infringement Contentions served contemporaneously with this Third Amended Complaint identify the claims infringed and the bases for CMS's infringement allegations.

51. NETGEAR has been on notice of the '825 Patent since at least as early as March of 2019.

52. CMS has been damaged as a result of NETGEAR's infringing conduct described in this Count.

53. NETGEAR's infringement of the '825 has been and continues to be willful.

54. Because NETGEAR's infringement of the '825 has been and continues to be willful, Plaintiffs seek enhanced damages of up to three times the amount found or assessed under 35 U.S.C. § 284.

### Additional Allegations

55. CMS has complied with 35 U.S.C. § 287.

### Jury Demand

56. CMS requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

### Prayer for Relief

CMS requests that this Court find in its favor and against NETGEAR, and that this Court grant CMS the following relief:

a. Enter judgment that NETGEAR has infringed the Patents-in-Suit;

b. Award Plaintiffs damages in an amount adequate to compensate Plaintiffs for NETGEAR's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty in accordance with 35 U.S.C. § 284;

c. Award Plaintiffs enhanced damages three times the amount of damages found or assessed under 35 U.S.C. § 284;

d. Award Plaintiffs pre-judgment and post-judgment interest to the full extent allowed under the law, as well as their costs;

e. Order NETGEAR to pay a reasonable royalty for each future infringement of the Patents-in-Suit;

f. Declare that this is an exceptional case and award Plaintiffs their reasonable attorneys' fees incurred in this action; and

g. Award such other relief as the Court may deem appropriate and just under the circumstances.

Dated:  February 7, 2020

By: /s/ Frank A. Angileri
Frank A. Angileri (*pro hac vice*)
Thomas A. Lewry (*pro hac vice*)
Marc Lorelli (*pro hac vice*)
Christopher C. Smith (SBN 238882)
**BROOKS KUSHMAN P.C.**
1000 Town Center, 22nd Floor
Southfield, MI 48075
Phone: (248) 358-4400 / Fax: (248) 358-3351
E-Mail: fangileri@brookskushman.com
E-Mail: tlewry@brookskushman.com
E-Mail: mlorelli@brookskushman.com
E-Mail: csmith@brookskushman.com

William E. Thomson, Jr. (SBN 47195)
**BROOKS KUSHMAN P.C.**
6005 S. Figueroa Street, Suite 2080
Los Angeles, California 90017-5726
Phone: (213) 622-3003 / Fax: (213) 622-3053
E-Mail: wthomson@brookskushman.com

*Attorneys for Plaintiffs*